599 So.2d 703 (1992)
Charles Timothy RICHARDSON, Appellant,
v.
STATE of Florida, Appellee.
No. 91-1368.
District Court of Appeal of Florida, First District.
May 13, 1992.
*704 Nancy A. Daniels, Public Defender, and Nancy L. Showalter, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Amelia L. Beisner, Asst. Atty. Gen., Tallahassee, for appellee.
JOANOS, Chief Judge.
Appellant seeks review of the denial of his motion to suppress a handgun discovered on his person in the course of a traffic stop for riding a bicycle at night without a light. Following denial of his motion, appellant entered a plea of nolo contendere to the offense of attempted possession of a firearm by a convicted felon, while reserving the right to appeal the denial of his motion. Adjudication of guilt was withheld and he was placed on probation for one year. The issue presented is whether a temporary stop for a civil traffic violation will, under the circumstances at bar, justify a weapons frisk under Section 901.151, Florida Statutes (1989). We affirm.
The record reflects that at 9:00 p.m. on September 3, 1990, an officer on routine patrol in a marked patrol car stopped appellant for riding a bicycle without a light. The officer testified that he routinely stops persons for such conduct, for the purpose of issuing warning notices. Appellant's extreme nervousness gave the officer concern that he might be armed. In addition, the officer observed a bulge at the back of appellant's waist underneath his untucked shirt. Each time the officer attempted to view appellant from all angles, appellant shifted his position to prevent the officer from circling around him.
The following examination sets forth the officer's reasons for conducting a frisk:
Q And why was that?
A ... he was extremely nervous when I stopped him. He was standing in front of me by the car, and he kept turning  he acted very nervous. His eyes got big.
And I observed his shirt was hanging out and there was a large  area back here that was  bulging out. I couldn't see what it was.
As I walked towards around to his back, he would move, to not allow me to look at it.
Q And when you say back here, are you talking about  in his pants?
A No. His shirt was untucked, and in his waist level was a bulge about  the size of two fists sticking out in the back of his  behind  underneath his shirt.
Q Okay. And did you feel concern about your safety at that point?

*705 A Yes. He  he was, like I said, he was nervous, and his eyes got big, and he was moving his feet.
I told him to stay  I had to tell him once or twice to stay up at the front, stop moving around. I explained to why I stopped him.
And I  as he kept moving around, I also ... asked him, I said, "Do you have " I felt that he had a weapon on him. I asked him, "Do you have any weapons? And when I said that, he got really nervous.
Q Okay.
A And at that time I told him, I said, "What's under your shirt?" And he just stood there.
And then I reached to pat him down and I felt the gun. It was inside ... one of those waist bags, those little  bags people wear, those little belts with a little  zipper bag on it. I could feel a little small-caliber handgun."
Q Okay. Before you put out your hand and touched the bulge, did you feel like you had probable cause to believe that there may have been a weapon?
A I felt that ... my safety was violated if ... that was a weapon. I thought it possibly  it could be something like that, a weapon.
Q Okay. And what happened when you touched it?
A Right away, first place I patted was right where  his shirt was covered. And I could feel ... the gun. And I knew it was a gun.
At that point, appellant was arrested and charged with possession of a concealed weapon.
Appellant maintains there was no legal justification for the frisk, urging that the stop for a civil traffic violation did not provide the officer with the reasonable suspicion that appellant was committing or about to commit a violation of the criminal laws which could justify a frisk. The state counters that the officer articulated sufficient particular facts which led him to believe that appellant was carrying a concealed weapon and urges that under the circumstances of this case, the frisk was not unreasonable. We agree with the state's contentions.
A valid frisk does not of course automatically follow from every valid stop. State v. Webb, 398 So.2d 820, 821 (Fla. 1981); Johnson v. State, 537 So.2d 117, 119 (Fla. 1st DCA 1988). In other words, a routine stop for a traffic citation does not, in and of itself, give rise to a valid reason or authorization for a frisk. Johnson, 537 So.2d at 119. Rather, an officer must have some additional articulable suspicion to believe that the person stopped is armed with a dangerous weapon. Thompson v. State, 551 So.2d 1248, 1249 (Fla. 1st DCA 1989). Although the reasonable founded suspicion necessary to justify a weapons frisk in the context of a stop does not rise to the level required for a search warrant or for an arrest, State v. Webb, 398 So.2d at 825, in order to go beyond a temporary stop justified by Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the police must have "some additional articulable suspicions that the person they have stopped may be armed with a dangerous weapon. If they do, the police may conduct a frisk or pat-down necessary to disclose the presence of a weapon." Thompson, 551 So.2d at 1249 (emphasis added).
Examples of types of conduct which may constitute articulable facts to support a reasonable suspicion that a suspect is armed and dangerous include: (1) the suspect's failure to cooperate, (2) the suspect's furtive movements, and (3) a bulge in the suspect's clothing. Johnson, 537 So.2d at 119.
A contra view was set forth in Daniels v. State, 543 So.2d 363 (Fla. 1st DCA 1989), where the court said that suspicious or furtive movements are not reasonable grounds to justify a stop and detention, even when combined with flight in a high crime area. That is, a "bare" or "gut" feeling that a suspect is engaged in criminal activity is an insufficient basis for a stop and frisk. Daniels, 543 So.2d at 366. Accord Gipson v. State, 537 So.2d 1080 (Fla. 1st DCA 1989).
*706 The propriety of the initial stop in this case is not at issue. The issue is whether the nervous behavior which appellant manifested as the officer attempted to talk to him was sufficient to warrant a reasonable belief that appellant was armed with a dangerous weapon in order to justify the ensuing frisk. We find that there was sufficient evidence to support the trial judge's determination that the frisk was justifiable. Therefore, we would not disturb the ruling. Ordinarily the issuance of a citation for failing to have a bicycle light would not validate a weapons frisk. However, the officer's description of appellant's conduct, together with the observation of the bulge, was enough to permit the judge's approval of the limited pat-down which disclosed the weapon.
AFFIRMED.
ERVIN and ALLEN, JJ., concur.