909 So.2d 390 (2005)
STATE of Florida, Appellant,
v.
Tomesha Marie HOWARD, Appellee.
No. 1D04-5295.
District Court of Appeal of Florida, First District.
August 5, 2005.
Charlie Crist, Attorney General; and Bryan Jordan, Assistant Attorney General, Tallahassee, for Appellant.
Nancy A. Daniels, Public Defender; and David P. Gauldin, Assistant Public Defender, Tallahassee, for Appellee.
BROWNING, J.
The State of Florida appeals the trial court's order granting Appellee, Tomesha Howard's, motion to suppress. Because the trial court based its ruling largely on Hilton v. State, 29 Fla. L. Weekly D1475 (Fla. 2d DCA June 18, 2004) (Hilton I), *391 we 1) reverse the order and remand with instructions to the trial court to deny the motion to suppress on the authority of Hilton v. State, 901 So.2d 155 (Fla. 2d DCA 2005) (en banc) (Hilton II); and 2) certify direct conflict with State v. Burke, 902 So.2d 955 (Fla. 4th DCA 2005). See Fla. R.App. P. 9.030(a)(2)(A)(vi).
Appellee was a passenger in her own 1994 Ford Escort automobile on April 16, 2004, when Alachua County Deputy Sheriff Hood passed the vehicle and observed the car's cracked or broken windshield. Deputy Hood conducted a traffic stop, recognized Appellee and the driver, and smelled marijuana when the driver stepped out of the car. During a consensual search of the car, the deputy discovered items of contraband inside. After Appellee was arrested and transported to the county jail, additional contraband was found on her person. The driver received a citation for driving while license suspended or revoked and was released at the scene of the traffic stop. Arrangements were made for a family member to drive the vehicle home. No citation was written for the broken windshield.
An information charged Appellee with trafficking in hydrocodone and oxycodone, possession of cocaine with intent to sell and/or deliver, introduction of contraband into a jail, possession of not more than 30 grams of cannabis, and possession of drug paraphernalia for storage. Appellee filed a motion to suppress asserting that the initial stop, detention, search, seizure, and interrogation of Appellee violated her rights under the United States Constitution and the Florida Constitution, such that all evidence obtained illegally should be suppressed. Specifically, the motion alleged: "No probable cause for a traffic offense nor founded suspicion of criminal activity existed to justify the stop." At the suppression hearing, defense counsel acknowledged the only issue was the legality of the initial traffic stop, i.e., whether the cracked windshield justified the stop. The attorneys discussed the applicability of section 316.610, Florida Statutes (2004), which states:
316.610 Safety of vehicle; inspection.  It is a violation of this chapter for any person to drive or move, or for the owner of his or her duly authorized representative to cause or knowingly permit to be driven or moved, on any highway any vehicle or combination of vehicles which is in such unsafe condition as to endanger any person or property, or which does not contain those parts or is not at all times equipped with such lamps and other equipment in proper condition and adjustment as required in this chapter, or which is equipped in any manner in violation of this chapter, or for any person to do any act forbidden or fail to perform any act required under this chapter.
(1) Any police officer may at any time, upon reasonable cause to believe that a vehicle is unsafe or not equipped as required by law, or that its equipment is not in proper adjustment or repair, require the driver of the vehicle to stop and submit the vehicle to an inspection and such test with reference thereto as many be appropriate.
(2) In the event the vehicle is found to be in unsafe condition or any required part or equipment is not present or is not in proper repair and adjustment, and the continued operation would probably present an unduly hazardous operating condition, the officer may require the vehicle to be immediately repaired or removed from use. However, if continuous operation would not present unduly hazardous operating conditions, that is, in the case of equipment defects such as tailpipes, mufflers, windshield *392 wipers, marginally worn tires, the officer shall give written notice to require proper repair and adjustment of same within 48 hours, excluding Sunday.
(Emphasis added). The State argued that the size of the crack in the windshield (which, according to the testimony of Appellee's father was 14 inches long) demonstrated that the "equipment [wa]s not in proper repair," contrary to section 316.610(1), thereby justifying the traffic stop. Defense counsel relied on the testimony of Appellee's father that the location and size of the crack did not present an unduly hazardous condition that would endanger any person or property under the statute.
As supporting case law for the traffic stop, the State offered Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); Holland v. State, 696 So.2d 757 (Fla.1997) (affirming district court's reversal of suppression order in light of objective test in Whren, where officer lawfully stopped vehicle in which defendant was passenger for failing to stop at stop sign, a direct traffic violation, and subsequent search revealed plain-view knife with cocaine residue on it); Hatcher v. State, 834 So.2d 314 (Fla. 5th DCA 2003) (affirming denial of motion to suppress, where driver of vehicle in which appellant was front-seat passenger made an illegal turn and appellant was not wearing seat belt; commission of traffic infractions justified traffic stop and detention involving search that disclosed pistol and drug contraband); K.G.M. v. State, 816 So.2d 748 (Fla. 4th DCA 2002) (affirming denial of motion to suppress, where officer stopped juvenile for operating vehicle with cracked windshield and observed purported marijuana seed on seat cushion, after which canine alert during external search of vehicle led to discovery of marijuana and drug paraphernalia); Smith v. State, 735 So.2d 570, 571-72 (Fla. 2d DCA 1999) (holding that traffic stop based on cracked windshield was valid based on Whren). The trial court concluded that the 14-inch "hairline crack" on the passenger's side of the windshield did not create a safety issue. The court attempted to distinguish Holland, Hatcher, K.G.M., and Smith and relied, instead, on the Second District Court's majority opinion in Hilton I, 29 Fla. L. Weekly at D1475, to support the proposition that a windshield crack alone is insufficient (without the showing of an unsafe condition creating a traffic hazard) to justify a warrantless traffic stop. The court construed Hilton I and the evidence of record to require granting Appellee's motion to suppress. The State timely sought review of that ruling. We have jurisdiction pursuant to section 924.07(1)(l), Florida Statutes (2004), and Florida Rule of Appellate Procedure 9.140(c)(1)(B) (authorizing State to appeal "an order ... suppressing ... evidence obtained by search and seizure").
Hilton I arose from an incident in which police officers discovered marijuana after stopping Hilton's car because it had a 7-inch crack in the upper corner on the passenger's side of the windshield. At the suppression hearing in Hilton, the officers stated they had intended to issue Hilton a traffic citation. See 29 Fla. L. Weekly at D1475. Section 316.2952(1), Florida Statutes (2004), requires motor vehicles such as Appellee's car operating on public thoroughfares to have "[a] windshield in a fixed and upright position ... equipped with safety glazing as required by federal safety-glazing material standards." Subsection (3) of this statute requires every motor vehicle to be equipped with a driver-controlled device for cleaning moisture from the windshield, and subsection (4) states that "[e]very windshield wiper upon a motor vehicle shall be maintained in good working order." Subsection *393 (6) provides that "[a] violation of this section is a noncriminal traffic infraction, punishable as a nonmoving violation as provided in chapter 318." However, section 316.2952 "says nothing about cracks." Hilton I, 29 Fla. L. Weekly at D1475. The trial court denied Hilton's dispositive motion to suppress the drugs. See id. The Second District Court in Hilton I reasoned that because section 316.610 expressly makes it a traffic violation to drive a car that "is in such unsafe condition as to endanger any person or property" or "does not contain those parts or is not at all times equipped with such lamps and other equipment in proper condition and adjustment as required in this chapter," yet section 316.2952 requires a car to have a windshield but does not state requirements for the "proper condition" of the windshield, "driving with a cracked windshield would be a traffic violation only if it violated the `unsafe condition' portion of section 316.610." See id. Absent any evidence that the crack in Hilton's windshield limited the driver's view or otherwise created an unsafe condition endangering any person or property, the Second District Court concluded that the facts did not establish that the officers had either probable cause or a reasonable suspicion to think Hilton was violating Florida traffic law. Finding the stop was illegal, and the evidence discovered as a result should have been suppressed, the district court reversed Hilton's conviction and remanded with directions to discharge him. See id. at D1476.
After the instant proceedings concluded in the trial court, the Second District Court reviewed Hilton I en banc, withdrew the original decision, and substituted an opinion affirming Hilton's conviction. See Hilton II, 901 So.2d at 155-57. Hilton II construed sections 316.2952 and 316.610(1) as establishing that the officers had lawfully stopped Hilton based on the cracked windshield because such an equipment violation is a noncriminal traffic infraction. The court stated: "Although the above two statutes do not specify under what circumstances an officer may stop a car to perform a safety inspection of a broken windshield, we conclude that an officer may stop a vehicle with a visibly cracked windshield regardless of whether the crack creates any immediate hazard." Id. at 157. Recognizing that this issue impacts law-enforcement policies throughout Florida, the court in Hilton II certified a question as a matter of great public importance. See id. at 160; Fla. R.App. P. 9.030(a)(2)(A)(v).
More recently, the panel in State v. Burke, 902 So.2d 955 (Fla. 4th DCA 2005), reached a result contrary to Hilton II by affirming an order suppressing evidence of drugs retrieved from Burke's pocket after an officer stopped Burke for having a cracked windshield and a partially broken taillight. See Id. The Fourth District Court observed that the correctness of Hilton II could depend on whether Doctor v. State, 596 So.2d 442 (Fla.1992), remains the law after Whren, 517 U.S. at 806, 116 S.Ct. 1769.[*]Burke set out the issue as follows:
In Doctor, the Florida Supreme Court held that a crack in the lens of a taillight was not a proper basis for the stop of a car because the taillight was still emitting red light in compliance with the statutory requirement for a taillight. Our supreme court held in Doctor that a reasonable officer would have known that the taillight was still in compliance *394 with the law. The majority in Hilton recognized the significance of Doctor, but noted that it was decided prior to Whren. In Whren the United States Supreme Court held that, when determining whether the stop of a vehicle is proper, the standard is whether the officer could have had a reasonable belief that the driver committed a crime or traffic infraction, and that the subjective intent of the officer involved was not relevant.
We conclude that Doctor is still good law and that the majority opinion in Hilton is inconsistent with Doctor.

902 So.2d at 957. The Fourth District Court certified direct conflict with Hilton II. See id.
Given our agreement with the reasoning in Hilton II, we conclude that Deputy Hood had an objective reasonable suspicion to stop Appellee's car and inspect the windshield, so that the evidence discovered after the stop should not have been suppressed. See Ivory v. State, 898 So.2d 184 (Fla. 5th DCA 2005) (affirming denial of motion to suppress, where deputy had reasonable suspicion to conduct traffic stop and inspect cracked windshield observed while driving behind defendant's vehicle); State v. Breed, 30 Fla. L. Weekly D1457, ___ So.2d ___, 2005 WL 1364397 (Fla. 5th DCA June 10, 2005). Accordingly, we REVERSE the trial court's suppression order and REMAND WITH INSTRUCTIONS to deny the motion to suppress. We certify direct conflict with Burke.
KAHN, C.J.; and LEWIS, J., concur.
NOTES
[*] We are constitutionally charged to construe the people's right to protection from unreasonable searches and seizures in conformity with the federal Fourth Amendment, "as interpreted by the United States Supreme Court." See Art. I, § 12, Fla. Const.